WHITE HOUSE MILK COMPANY, Respondent, vs. THOMSON, Attorney General, and others, Defendants: PURE MILK PRODUCTS CO-OPERATIVE, Proposed Intervenor and Appellant.

*February 6—March 5, 1957.*

For the appellant there was a brief by *St. Peter & Hauer* of Fond du Lac, and oral argument by *George M. St. Peter.*

For the respondent there was a brief by *Michael, Spohn, Best & Friedrich,* attorneys, and *Kenneth K. Luce* and *John K. MacIver* of counsel, all of Milwaukee, and oral argument by *Mr. Luce* and *Mr. MacIver.*

CURRIE, J.   Sec. 100.22, Stats., which the plaintiff seeks to have declared unconstitutional, is a criminal statute which prohibits a purchaser of milk, cream, or butterfat from paying different prices for such products in different communities of the state, unless justified by a commensurate difference in quantity or quality, or in transportation charges or other expense of marketing involved in the purchase. It is apparent from the express wording of the statute that its purpose is to prevent unfair discrimination in the purchase of such dairy products between different communities or sections of the state.

The brief of the co-operative asserts that among its producing members which it represents are 728 farmers who sell milk, cream, or butterfat to the plaintiff. The plaintiff is interested in having sec. 100.22, Stats., declared unconstitutional so that it can pay lower prices in certain communities than would be the case if compliance with this statute were required. On the other hand, it is to the interest of the co-operative, and its members who sell to the plaintiff, that sec. 100.22 be determined to be constitutional in order that the plaintiff not be permitted to reduce the prices paid by it for these dairy products anywhere in the state below the highest prices, which it is forced to pay to meet competition in any of the five communities of the state where it is engaged in business.

In a common-law jurisdiction, such as Wisconsin, intervention is a matter of statutory creation, it not having been recognized at common law. 67 C. J. S., Parties, p. 975, sec. 53 b. Counsel for the co-operative ground their clients claimed right of intervention upon that portion of sec. 260.19, Stats., which provides that "when persons not parties have such interests in the subject matter of the controversy as require them to be parties for their protection, the court shall order them brought in."

It was the conclusion of the learned trial judge, as stated in his memorandum opinion, that while the co-operative and its farmer members have a general interest in the outcome of the pending action, this is not a sufficient interest to entitle them to be made defendants. The memorandum opinion points out that other producers of milk, cream, or butterfat, not members of the co-operative as well as all consumers of such products, also have this same general interest.

The attorney general is one of the three original defendants in the action, and it is his duty to uphold the constitutionality of the attacked statute. In so doing he is acting in a representative capacity in behalf of all the people of the state, including those who are members of the co-operative. This being so, we find it extremely difficult to perceive how their interests *"require"* that the co-operative be made a party for the protection of interests which are already being adequately protected. 39 Am. Jur., Parties, p. 934, sec. 60, states:

"It is universal that no one has any right to intervene in any action unless he has some right to protect which is not being protected."

Certainly the co-operative is not a *necessary* party to the controversy presented in the pending action. We hesitate to hold that it is even a *proper* party, absent any allegation in the petition for intervention that the attorney general has

failed in his duty to properly defend the action and uphold the constitutionality of the challenged statute. Nevertheless, even if it were conceded to be a proper party, the co-operative cannot prevail on this appeal without demonstrating that the trial court abused its discretion in denying the application for intervention. *Schatzman v. Greenfield* (1956), 273 Wis. 277, 281, 77 N. W. (2d) 511; *Fish Creek Park Co. v. Bayside* (1956), 273 Wis. 89, 93, 76 N. W. (2d) 557; and *Muscoda Bridge Co. v. Worden-Allen Co.* (1928), 196 Wis. 76, 98, 219 N. W. 428.

This court held in the *Muscoda Bridge Co. Case* that the village of Muscoda and town of Eagle, because of being partly liable for the construction of the bridge, possessed sufficient interest in the subject matter of the controversy to make them proper parties to the action. The denial of their application for intervention by the trial court was affirmed as not being an abuse of discretion on the ground that their interest would be sufficiently protected by reason of the state and counties having been made parties. We deem such decision to be decisive of the instant appeal. Here the interests of the co-operative and its members are sufficiently protected by having the attorney general as a party defendant.

The provisions of the trial court's order granting to the co-operative the right to file a brief *amicus curiae,* and to make an oral argument at the conclusion of the trial, further negative any charge of abuse of discretion on the part of the trial court.

Counsel for the co-operative place great reliance upon the decision of the Montana court in *State ex rel. Westlake v. District Court* (1946), 119 Mont. 222, 227, 173 Pac. (2d) 896, 169 A. L. R. 827, which directed that intervention should be granted in a fact situation very similar to that in the instant case, where the validity of a statute was the subject matter of the controversy. However, the Montana statute which controlled reads very differently from our sec.

260.19. Such Montana statute grants to any person "who has an interest in the matter in litigation [or], in the success of either of the parties," the right to intervene in the action. Our statute does not go that far. It is also interesting to note that California, which has the same intervention statute as Montana, does not construe the same as liberally as does Montana. *Jersey Maid Milk Products Co. v. Brock* (1939), 13 Cal. (2d) 661, 91 Pac. (2d) 599.

The brief of Pure Milk Products also cites sub. (11) of sec. 269.56, Stats. (the Uniform Declaratory Judgments Act), which subsection provides, "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration." To place the interpretation on such subsection that is here urged by the co-operative would render the Uniform Declaratory Judgments Act unworkable as a procedural device for securing a determination of the validity of a statute or ordinance. This is because it would require joining as parties all persons who might be affected by the outcome, who in the instant case might be thousands of dairy farmers. Such provision should be reasonably interpreted, keeping in mind the objectives of the act. Therefore, we construe such subsection as not requiring the joinder as parties, in a declaratory action to determine the validity of a statute or ordinance, of any persons other than the public officers charged with the enforcement of the challenged statute or ordinance. Such defendant public officers act in a representative capacity in behalf of all persons having an interest in upholding the validity of the statute or ordinance under attack. For a further discussion of this point, see *Blooming Grove v. Madison,* post, pp. 328, 334, 81 N. W. (2d) 713.

The co-operative is apprehensive that the attorney general will not diligently and adequately defend the action, and, if the action is determined adversely to the defendants, that he will not appeal such result to this court. Such fear is

grounded upon a letter which the attorney general wrote May 31, 1951, to the general manager of the co-operative. Such letter expressed the opinion that sec. 100.22, Stats., was unconstitutional under the decision of the United States supreme court in *Fairmont Creamery Co. v. Minnesota* (1927), 274 U. S. 1, 47 Sup. Ct. 506, 71 L. Ed. 893. For this reason the attorney general at that time declined to take action to enforce sec. 100.22. 52 Am. Jur., Taxpayers' Actions, p. 18, sec. 26, states:

"Public officers are always presumed, in the absence of any showing to the contrary, to be ready and willing to perform their duty; and until it is made to appear that they have refused to do so, or have neglected to act under circumstances rendering this equivalent to a refusal, there is no occasion for the intervention of the citizen for the protection of himself and others similarly situated."

This court cannot assume, because the attorney general nearly six years ago expressed a doubt as to the constitutionality of sec. 100.22, Stats., and at that time declined to institute a prosecution under such statute, that he will not at this time properly and diligently defend the action. Likewise, we cannot conceive of the attorney general failing to perform his duty of appealing, if the trial court should adjudge sec. 100.22 unconstitutional. The issue of the validity of such statute is of such state-wide concern that he would be derelict in his duty if he did not appeal an adverse judgment. We must presume that he will perform his duty until such time as we are presented with convincing evidence to the contrary.

*By the Court.*—Order affirmed.

WINGERT, J., took no part.